IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CERAMFAB, INC., | : | |
| CERAMSOURCE, INC., and | : | Case No. 4:23-cv-00509 |
| WYG REFRACTORIES, LLC, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| NORFOLK SOUTHERN | : | |
| CORPORATION, and NORFOLK | : | |
| SOUTHERN RAILWAY COMPANY, | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF CERAMFAB'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff respectfully moves this Court for a temporary restraining order and preliminary injunction and requests an emergency call with the Court to discuss the matter on Wednesday, March 22, 2023, or as soon as possible for the Court. A temporary restraining order and preliminary injunction is necessary to prevent the destruction of highly relevant evidence related to the train derailment in East Palestine, Ohio that was caused by Defendants Norfolk Southern Corporation and Norfolk Southern Railway (hereinafter "Defendants" or "Norfolk Southern"). Plaintiff's Motion is supported by the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.  INTRODUCTION**

Plaintiff CeramFab is a business that filed suit against Defendants on March 13, 2023, for claims arising from the derailment of Defendants' Train 32N immediately adjacent to Plaintiff's

property in East Palestine, Ohio on Friday, February 3, 2023, at approximately 9:00 pm ("Derailment").[1] Train 32N consisted of 149 cars and was carrying abnormally dangerous and ultrahazardous chemicals including, but not limited to, vinyl chloride, while traveling from Illinois to Pennsylvania. Approximately 38 of the cars derailed in East Palestine, 11 of which were among those carrying vinyl chloride and other hazardous materials. The train was ablaze when it derailed and the fire continued to burn for several days, sending dangerous levels of toxic chemicals into the air and water.

On Monday, February 6, 2023, Defendants decided to release and burn off the remaining vinyl chloride. This controlled burn sent a large plume of thick black smoke into the air, forming a mushroom cloud which dispersed numerous toxic byproducts and chemical constituents into the atmosphere and caused further contamination.

Plaintiff CeramFab's facility is located directly adjacent to – and mere feet from – the site of the Derailment, and the CeramFab property sustained significant contamination from the Derailment and controlled burn. In the weeks following the derailment and burn, Defendants have been engaged in various clean-up and remediation efforts – many at direct order from the EPA. Upon information and belief, Defendants have at times fully remediated areas under their control without taking adequate sampling of the constituents. This has resulted in possible permanent destruction of contamination evidence which might be required to determine the full scope of the harm caused to both CeramFab and the exposed greater East Palestine community.

As part of these ongoing remediation activities, Defendants determined at some point that they desired to get onto the CeramFab property. Defendants first approached Plaintiff's counsel on February 27, 2023, requesting a broad agreement – for virtually any reason and without

---

[1] Upon information and belief, Plaintiffs' complaint remains the only one at this time that has been filed as an individual, rather than class, action.

restriction – granting Defendants access onto CeramFab's property at 900 E Taggart Street. In the following weeks, Plaintiff's counsel conferred with Defendants on multiple occasions via phone and email in an attempt to get clarification regarding the scope of work intended on the property and assurances regarding the preservation of contamination evidence. Defendants, however, were consistently unwilling or unable to provide any clarity on what toxic contaminants it suspected to be present on the property, what specific work was to be performed on the property, the specific timeline for the any work on the property, or how potential contamination evidence was to be preserved during the remediation. Failing to obtain any of these details from Defendants, CeramFab was unwilling to consent to the overly broad access agreement – despite Defendants unilaterally setting a same day acceptance deadline of Friday, March 17, 2023.

On the following Monday, March 20, 2023, Plaintiff's counsel spoke with counsel for the EPA for the first time. The EPA made clear they were calling on Defendants' behalf since the original access agreement was not accepted and that the agency would simply force CeramFab to allow access. During this call Plaintiffs' counsel reiterated the requests for information and need for evidentiary preservation which had repeatedly been expressed to Defendants. It was at this moment, for the first time, Plaintiff's counsel learned Defendants' intended to remediate expected toxic contaminants from the below-ground storm drains on CeramFab's property. Counsel for both Norfolk Southern and the EPA have since been either unwilling or unable to provide any details as to what particular toxic constituents – and at what levels – are expected to be present on CeramFab's property. They have also made clear that they are under no obligation to coordinate evidence preservation or constituent testing – or even to guarantee a scope of work process would be employed such that relevant contamination or toxic constituent evidence would be adequately tested and preserved. Finally, counsel for both the EPA and Norfolk Southern have indicated that

the EPA is expected to imminently exercise its authority under various regulatory and statutory provisions to unilaterally access the site if Plaintiffs do not consent to Norfolk Southern's access agreement – as it has presently proposed – by 5:00 PM EDT on Wednesday, March 22, 2023.

      **A.**     **Defendants and the EPA Unilaterally Set a Deadline Without Justification and Without Adequate Planning to Prevent the Destruction of Critical Evidence**

On the afternoon of February 27, 2023, Plaintiff's counsel received an email from a Norfolk Southern manager, Mark Felicetti, which included the original draft of the access agreement at issue. (Ex. 1). In that agreement, Norfolk Southern would be granted unfettered access to perform "clean-up activities" which are defined to include "locating, constructing, drilling, repairing, maintaining, and periodically sampling and/or monitoring one or more environmental soil borings, groundwater monitoring wells, and/or piezometers, and/or the construction, location, and placement of one or more trenches, excavations, or geotechnical borings" at any location on the premises without providing any notice to CeramFab. Additionally, Norfolk Southern would not have to provide any sort of accounting to Plaintiff of what activities took place, nor would it be required to take any samples of removed materials to preserve any potential evidence of contamination or toxic constituents on CeramFab's property.

Plaintiff's counsel has repeatedly asked for a more detailed scope of work to ensure that its property is protected, that potential evidence is being preserved for Plaintiff's case or other present and future cases against Defendants, that the full scope of the toxic dangers posed to the greater East Palestine community are adequately understood, and that Plaintiffs' experts have access to the materials they need to form their opinions in this case. It wasn't until the evening of March 20, 2023, that Plaintiff's counsel was finally provided any level of specificity regarding the work that would be performed or the concerns which Defendants had expressed to EPA regarding the likely toxic constituents still on the property. At this time, Plaintiffs' counsel was informed that the work

4

would primarily focus on three items: 1) a clean-out of the storm sewers on CeramFab's property, 2) the use of CeramFab's property as a part of Norfolk Southern's removal of railroad tracks ("Track Two") adjacent to the property, and 3) the remediation and restoration of trenches along the North and East sides of CeramFab's primary building. Even this clarification leaves Plaintiff with no specific guidance of how and when the work will occur, what precautions will be taken to ensure no further damage is done to CeramFab's property, what specific toxic constituents Defendants expect are present, the basis for Defendants' expectation those toxic constituents are present, what sampling is intended to be done during the remediation work, and how any potential evidence will be preserved or how sampling will be coordinated with Plaintiff's experts. To the contrary, the updated draft access agreement provided by Norfolk Southern's counsel explicitly says that sampling ***will not*** occur prior to the removal of contaminated materials from the storm sewer system. (Ex. 2).

Now, Norfolk Southern and the EPA have threatened to take unilateral action to access CeramFab's property and to potentially destroy key evidence as to the full scope of the contamination caused by Defendants – and that this destruction might begin in just a few hours from the time of this filing (after 5:00 pm EDT). That is patently unreasonable and does not allow Plaintiff time to work out a proper agreement that protects either its rights or the rights of every other East Palestine community member who may have an actionable claim. More clarity from Defendants as to the specificity of the work to be performed, what toxic constituents are expected, why they have those expectations, when various remediation tasks will be performed, and a longer period for Parties to negotiate an adequately thorough protocol to ensure Plaintiffs' experts can obtain the necessary sampling and evidence prior to Defendants' spoliation of the same.

Despite the unreasonable deadline, Plaintiff has already consulted with an environmental

5

expert who has made recommendations on what plans need to be put in place to ensure this work is done properly. (Ex. 3). As detailed in his affidavit, Mr. Stahl is concerned that the lack of a detailed scope of work and proper protocol "could result in an ineffective and potentially unsafe or hazardous operation." (Ex. 3, ¶4). Defendants have not currently provided any of the critically necessary plans or a protocol for any of the multiple facets of their proposed clean-up activities. Plaintiff and its experts need time to negotiate in good faith with Defendants to ensure everything is done properly, both to preserve evidence and to protect CeramFab's property and the surrounding community.

While Plaintiff is mindful of the need for expedient remediation of the East Palestine community, undersigned respectfully requests that a temporary restraining order be issued to prevent Defendants, the EPA, or any other related entities from entering the CeramFab property and from removing soil — or any other material — from the site until such time as a protocol has been put in place that adequately protects against the spoliation of potential relevant toxic contamination evidence and ensures that Plaintiff's experts have sufficient time and access to any materials that will be removed from the site. The time remaining before Defendants' and the EPA's deadline is not sufficient. Furthermore, as the Court is likely aware, Plaintiff's case is not the only lawsuit presently filed – or expected to be later filed – involving the derailment. In the spirit of cooperation and transparency, Plaintiff's counsel in this action have provided notice to representative counsel for both potential Rule 23 leadership slates identified in the recently filed class action leadership proposals as Defendants' and EPA's unilateral deadline does not allow time for those counsel to evaluate how their respective claims may also be affected by Defendants' actions on the CeramFab property given its immediate proximity to the derailment and burn site.

A temporary restraining order is necessary to prevent the destruction of relevant and

probative evidence in this case. Moreover, a temporary restraining order will allow all parties time to come to an agreement on details and protocols for, among other things, an inspection of the storm sewer system, a sampling protocol for any potentially contaminated materials located during the inspection, a protocol for the safe removal of any such identified materials, and subsequent verification sampling and inspection to ensure that the problem has been adequately addressed. And if that fails, a temporary restraining order allows time for the Court to weigh in on what is appropriate under the above-described circumstances. The terms and details of these important plans and protocols should not be undermined by the Defendants' and EPA's self-imposed deadlines. Having an established and agreed-upon protocol is necessary, in advance, so that CeramFab – as well as the greater East Palestine community which is still trying to determine the full extent of its contamination damages and risks – can be confident that all work is conducted safely and that evidence is not moved, changed, or altered prior to Plaintiff's experts having an opportunity to evaluate it. Unlike the irreparable harm Plaintiff will suffer from the destruction of evidence, Norfolk Southern suffers no harm should an injunction briefly maintaining the status quo be issued by this Court.

## II. ARGUMENT

### A. Legal Standard

The party seeking injunctive relief bears the burden of establishing entitlement to such relief. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 1996). The Sixth Circuit has set forth the factors for a court to balance when determining whether to grant a temporary restraining order and/or preliminary injunction.[2] *Just Funky, LLC v. Unique Logistics Int'l N.Y. City, LLC*, No. 5:20-CV-2699, 2021 WL 1339133 at *2 (N.D. Ohio April 9, 2021), citing *Am. Civil Liberties Union*

---

[2] The standard for a preliminary injunction is the same as for a temporary restraining order. *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).

*Fund of Mich. v. Livingtson Cnty.*, 769 F.3d 636, 642 (6th Cir. 2015). The factors to be considered are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Just Funky, LLC*, 2021 WL at *2-5, citing *Am. Civ. Liberties Union*, 769 F.3d at 642.

When deciding whether to issue a temporary restraining order, particular attention should be paid to the irreparable harm element. *Recon Nat. Res., LLC v. Cook*, No. 5:20-CV-0733, 2020 WL 1862669 at *2 (N.D. Ohio, April 14, 2020). The factors to be considered are not prerequisites, but rather considerations that must be balanced against one another, keeping in mind that a temporary restraining order is "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Id.*

### 1. Plaintiffs' Likelihood of Success on the Merits

To establish a likelihood of success on the merits, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp. v. Cafcomp Sys.,* 119 F.3d 393, 402 (6th Cir. 1997). Even if the plaintiff fails to show a strong or substantial probability of ultimate success on the merits, the court may grant a preliminary injunction if there are serious questions going to the merits and the irreparable harm outweighs any potential harm to defendant. *See In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 860 (6th Cir. 1992.)

Plaintiff's complaint asserts several causes of action, including for negligence, strict liability, and private nuisance. Examining even just these three claims reveals Plaintiff will likely be successful on the merits.

As to negligence, Plaintiff alleges Defendants had a duty, consistent with federal regulations, its own internal rules, and industry practices and procedures, to use reasonable care during the operation of their railroad and transportation of hazardous chemicals. Such duties include, *inter alia*, ensuring proper procedures for timely identifying malfunctions of the railway and railcars to prevent derailments while transporting hazardous materials; ensuring proper procedures and training for responding to derailment of railcars containing hazardous materials; ensuring proper procedures and training for response to mechanical malfunctions of a railcar; and instituting proper procedures to avoid exposing hazardous materials to the environment. Plaintiff alleges Defendants breached their duties to Plaintiff as they, *inter alia*, failed to operate, maintain, inspect, and/or repair the railway and railcars in such a manner to ensure their safe and proper operation while carrying hazardous materials; failed to ensure proper procedures or systems for timely identifying any malfunctions of the railway and railcars in order to prevent or mitigate derailments; and failed to institute proper procedures to avoid exposing hazardous materials to the environment. While this case has only been pending a short time and no formal discovery has been conducted, based on what has been reported to date, Plaintiff respectfully submits that they will likely be successful on their negligence claim. To quote NTSB chair Jennifer Homendy, "This was 100% preventable. . . [W]e call things accidents. There is no accident."[3]

Ohio law follows the Restatement (Second) of Torts, § 519 which states that "one who carries on an abnormally dangerous activity is subject to [strict] liability for harm to the person, land, or chattels of another resulting from the activity, although he exercised the utmost care to prevent the harm." *Hirsch v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 124211 at *13 (N.D. Ohio,

---

[3] *Norfolk Southern alerted to overheated wheel bearing right before Ohio train derailment*, Cincinnati Enquirer, February 23, 2023, *available at* https://www.cincinnati.com/story/news/2023/02/23/ohio-train-derailment-ntsb-releases-initial-findings/69932712007/.

Oct. 22, 2008), quoting Restatement (Second) of Torts § 519(1) (1977). Plaintiff alleges Defendants engaged in an abnormally dangerous and/or ultrahazardous activity for which common law strict liability applies for transporting hazardous substances, including vinyl chloride, through a residential community in a manner Defendants knew would be dangerous and without taking proper precautions. Again, based on the information that has come to light to date, it is known Defendants were carrying five railcars of vinyl chloride — as well as multiple cars of other ultrahazardous and carcinogenic substances — that derailed in a residential community. Furthermore, Defendants subsequent intentional release and burn of the vinyl chloride in a trench created for that purpose resulted in a release of other dangerous byproducts that contaminated the air, water, and soil of this residential community. Further examination, inspection, and testing will be required, particularly of areas close to the derailment site like CeramFab's property.

A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 94 (8th Dist.), quoting *Brown v. Cty. Commrs*, 87 Ohio App.3d 704, 712, 622 N.E.2d 1153 (4th Dist.1993). For a "private nuisance claim to be actionable, the invasion must be either intentional and unreasonable, or unintentional but caused by negligent, reckless, or abnormally dangerous conduct." *Id.* Plaintiff alleges that Defendants knew or should have known that the hazardous chemicals they were transporting, including vinyl chloride and butyl acrylate, as well as combustible byproducts including phosgene and hydrogen chloride were hazardous and harmful to real property and human beings. Defendants, through their negligent, reckless and/or intentional acts and omissions have contaminated real property located in and around East Palestine.

Clearly, the allegations raised in Plaintiff's complaint are serious, substantial, and fair ground for litigation such that more deliberate investigation is warranted, particularly when it

comes to the evidence at CeramFab's property immediately adjacent to the derailment site. Moreover, the risk of irreparable harm to Plaintiff if the temporary restraining order is not granted weighs in favor of granting such relief.

### 2. Irreparable Harm

Irreparable harm is "an injury for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete." *Recon Nat. Res., LLC,* 2020 WL at *6, citing *Dunning v. Varnau*, 95 N.E.3d 587, 593 (Ohio Ct. App.). Given the nature and magnitude of this event, Plaintiff will suffer irreparable harm if orders are not entered to prevent Defendants from entering its property and removing or destroying materials without a proper evidentiary sampling or preservation protocol in place. Furthermore, there is no adequate and complete remedy at law or monetary damages for Plaintiff if Defendants are permitted to remove and destroy relevant physical evidence in this case or act in a manner which likely permanently prohibits Plaintiff's experts from determining the full scope of the contamination to the CeramFab property or the greater East Palestine community. Once Norfolk Southern destroys the evidence through its remediation efforts, to state the obvious, it is forever gone and nothing Plaintiff could do would reverse that spoliation.

It is abundantly clear that Plaintiff CeramFab will suffer irreparable harm if Defendants are permitted unilateral access to its property to begin removing materials without regard for the preservation of what toxic constituent evidence is currently present. This evidence cannot be replaced, restored, or recreated once it is removed, remediated, or destroyed. The presence of contaminated materials—and in what quantities—may have significant bearing on what other parts of CeramFab's property need testing and could provide key information regarding the potential past and ongoing health concerns for the business' owner and employees. A proper scope of work

needs to be in place before access is granted, and Plaintiff's experts should be permitted adequate notice and time to assess what sampling needs to take place, rather than according to the unilateral terms as currently dictated by Defendants and the EPA.

### 3. Harm to Others

The third factor to consider is whether the temporary restraining order would cause substantial harm to others. Plaintiff is not aware of any third parties that may be harmed by the issuance of an order to briefly prevent Defendants from removing and destroying evidence from Plaintiff CeramFab's property. Conversely, Plaintiff is acutely aware that allowing Defendants to act now without an adequate protocol in place could permanently harm the interests of the twenty-one (21) class cases currently filed, forever limit the greater East Palestine community from understanding the full extent of the harm to which it might be exposed, and exclude future individually filing plaintiffs from establishing their own claims against Norfolk Southern. While Plaintiff understands that Defendants and the EPA need to move forward with the broader remediation efforts—and that they will require access to CeramFab's property to complete that work—because of its immediate proximity to the derailment and burn site, CeramFab's property likely includes evidence that is not still present at any other location and it must be adequately collected or preserved. With all these factors considered, Plaintiff agrees to work expeditiously with all parties on a protocol for inspection, testing, and experts on site as soon as feasible.

### 4. Public Interest

The final factor for consideration is whether issuance of a temporary restraining order would serve the public interest. A temporary restraining order to prevent Defendants from removing key evidence regarding the extent of both past and ongoing contamination of CeramFab's property helps both Plaintiff and all others in the surrounding area. East Palestine is

a town of approximately 4,700 residents. Almost everyone in the greater East Palestine community has been impacted by the derailment of Defendants' train and subsequent controlled burn of vinyl chloride. Numerous lawsuits and class action cases have been filed on behalf of residents and business aside from CeramFab and its co-plaintiffs. Multiple town hall meetings have been held since the derailment, and there appears to be growing concern that residents and business owners are not getting all the information they need and deserve. Public concern will only grow if Norfolk Southern destroys evidence without giving Plaintiff's experts time to properly document and test the materials being removed. The public interest in this temporary restraining order to prevent Defendants from intentionally or inadvertently removing, remediating, or destroying evidence of the toxic contamination before it can be properly inspected and collected by Plaintiff's experts could not be any greater.

### III.   CONCLUSION

Based on the foregoing, Plaintiff's motion for a temporary restraining order and preliminary injunction against Defendants should be granted prohibiting access by Norfolk Southern, the EPA, or any other related entities onto CeramFab's property for the removal, remediation, or destruction of any materials or potential evidence from the property until all suspected contaminants have been identified, a proper collection and testing protocol is put in place, and until Plaintiffs' experts have had a reasonable opportunity after learning what contaminants are suspected to be present to visit the site and collect any information, data and samples they need to form their opinions in this case.

Dated: March 22, 2023  Respectfully submitted,

/s/ Jon. C. Conlin
Jon C. Conlin (AL Bar #7024-J66C)
F. Jerome Tapley (AL Bar #0583-A56T – Admission Pending)
R. Andrew Jones (AL Bar #0096-I11R – Admission Pending)
Hunter Phares (AL Bar #5406-G38V – Admission Pending)
**CORY WATSON, P.C.**
2131 Magnolia Ave South
Birmingham, AL 35205
Phone: (205) 328-2200
Fax: (205) 324-7896
jconlin@corywatson.com
jtapley@corywatson.com
ajones@corywatson.com
hphares@corywatson.com

***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2023, I served via electronic mail to the email addresses identified below a true and correct copy in PDF format of Plaintiff CeramFab's Motion for a Preliminary Injunction and Application for a Temporary Restraining Order upon all counsel listed below:

Aaron M. Ponzo, Esq.
Scott D. Clements, Esq.
**DICKIE, MCCAMEY & CHILCOTE, P.C.**
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402
aponzo@dmclaw.com
sclements@dmclaw.com

*Counsel for Defendants*

Jeffrey A. Cahn, Esq.
**U.S. Environmental Protection Agency**
Office of Regional Counsel (Mail Code C-14J)
77 West Jackson Blvd.
Chicago, IL 60604
Cahn.jeff@epa.gov

*Counsel for EPA*

Jayne Conroy, Esq.
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
jconroy@simmonsfirm.com

*Counsel for Feezle Proposed Rule 23 Leadership Group*

Ron R. Parry, Esq.
**STRAUSS TROY**
150 E 4th Street #4
Cincinnati, Ohio 45202
rparry@strausstroy.com

*Counsel for Fisher Proposed Rule 23 Leadership Group*

                                      */s/ Jon. C. Conlin*